UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARK JAMAL KEARNEY, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:14-CV-39 |
| § | |
| GARY L CURRIE, *et al*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND RECOMMENDATION**
**TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE**

Plaintiff Mark Kearney is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and is currently confined at the McConnell Unit in Beeville, Texas. Plaintiff filed this lawsuit on February 5, 2013, challenging, *inter alia,* certain policies and practices of the TDCJ-CID that Plaintiff claims violate his First Amendment right to practice his Muslim faith, and also his statutory rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). He named as defendants: (1) Brad Livingston, the TDCJ Executive Director; (2) William Stephens, the TDCJ-CID Director;[1] (3) McConnell Unit Warden Gary L. Currie; (4) McConnell Unit Warden Carole E. Monroe; and (5) Warden L. Clark, the Region IV Director. (D.E. 1, p.3).

---

[1] Plaintiff named former TDCJ-CID Director, Rick Thaler, as a defendant; however, William Stephens is the new TDCJ-CID Director, and he was substituted as the proper party defendant.

1 / 12

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. *Ruiz v. United States,* 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, *Haines v. Kerner,* 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that the Court retain Plaintiff's First Amendment and RLUIPA claims for injunctive relief against Defendants Brad Livingston and William Stephens in their official capacities. However, it is respectfully recommended further that the Court stay any discovery or litigation on these particular claims until resolution of *Ali v. Stephens,* Case No. 9:09-cv-052, currently pending in the United States District Court for the Eastern District of Texas, Lufkin Division, and set for a bench trial on July 14, 2014. As to Plaintiff's claims that he was held in solitary confinement illegally in violation of his due process rights and/or the Eighth Amendment, it is respectfully recommended that these claims be retained and service ordered on Warden Monroe in his individual capacity. It is respectfully recommended that Plaintiff's remaining claims against the remaining Defendants be

dismissed for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I. Jurisdiction.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. Plaintiff's allegations,

A *Spears*[2] hearing was held on March 13, 2014. The following allegations were made in Plaintiff's original complaint (D.E. 1), or at the hearing:

Plaintiff entered the TDCJ-CID in 2003. Plaintiff was not raised with a particular faith or religion, but in 2006-2007, he began practicing the Muslim faith, and he is identified as Muslim on his prison travel card. He has been confined to the McConnell Unit since 2007.

Under the tenets of his Muslim faith, Plaintiff is required to maintain a beard. Despite the fact that a fellow Muslim inmate successfully challenged the TDCJ's no-beard policy in *Garner v. Kennedy,* 713 F.3d 237 (5th Cir. 2013), Defendants have continued to enforce the no-beard grooming policy. Plaintiff testified that, if he refuses to shave, he is subject to receiving a disciplinary case and/or loss of privileges, including recreation and commissary. He has been denied a meal for failure to shave. Plaintiff

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

filed grievances challenging the TDCJ grooming policy, but his grievances were denied by Warden Monroe at Step 1, and Warden Clark denied his grievances at Step 2.

According to Plaintiff, Warden Monroe disrespected all G4 Muslim prisoners on June 4, 2013, when he "scattered Jummah throughout the unit," rather than allowing all Muslim inmates to pray together.[3]  Plaintiff and his small group of approximately 10 to 12 other offenders were assigned to the multipurpose room, and when they arrived there, they found it to be hot and dirty, with no prayer mats. Plaintiff complained and security called Chaplain Vargeese who explained that a Christian service was using the room normally reserved for Jummah.  The Muslims inmates were "furious" about the conditions, and Plaintiff was very "vocal" with his complaints.  Plaintiff thought a riot might start, and he told the other Muslim inmates to just accept the situation and enter the multipurpose room.  However at this point, the security staff began threatening certain inmates, including Plaintiff.  Warden Monroe then arrived at the scene, saw Plaintiff, and immediately decided that Plaintiff was responsible for the uproar.  Plaintiff was ordered to submit to restraints, and he complied.  He was then taken to solitary confinement. Plaintiff was held in solitary confinement for 18 to 19 days, with no disciplinary charges filed against him and no disciplinary hearing held.

The solitary confinement cell was hot and had little ventilation.  In fact, three other inmates held in the solitary block passed out.  Plaintiff asked to go to medical, and security told him to submit a sick call request ("SCR"), but Plaintiff did not have a pen or paper, and the security staff refused to provide it.  Plaintiff believes his blood pressure

---

[3] Plaintiff testified that, for Jummah "to be valid," there must be at least 40 male participants.

increased when he was in solitary confinement, although he is fine now. He has not had any major disciplinary cases since his release from solitary confinement.

### III.   Legal standard.

As previously noted, plaintiff's action may be dismissed for failure to state a claim upon which relief can be granted despite his failure to exhaust administrative remedies. 42 U.S.C. § 1997e(c)(2). The Supreme Court has held that "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *accord Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted). The complaint must be liberally construed in favor of the prisoner, and the truth of all pleaded facts must be assumed. *Id.*

### IV. Discussion.

#### A.   **Plaintiff's claims under the First Amendment and RLUIPA.**

Plaintiff is suing Brad Livingston and William Stephens in their official capacities for injunctive relief to wear a quarter-inch beard under the First Amendment and RLUIPA.

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof. U.S. Const., amend. I. The United States Supreme Court has held that prisoners retain their First Amendment right, including the right to free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Nevertheless, an inmate retains only those First Amendment rights which "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Thus, a prisoner's right to practice his religion may be limited where the prison officials establish that there is a legitimate penological objectives. *Id.; Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972) (per curiam); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone*, 482 U.S. at 349 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

In *Turner v. Safley*, the Supreme Court set forth four factors that a court should consider in determining whether a reasonable relationship exists between a regulation and the governmental interest: (1) whether the regulation has a logical connection to the legitimate government interests invoked to justify it; (2) whether there are alternative means of exercising the rights that remain open to the inmates; (3) the impact that accommodation of the asserted constitutional right will have on other inmates, guards and prison resources; and (4) the presence or absence of ready alternatives that fully accommodate the prisoner's rights at *de minimus* cost to valid penological interests.

*Turner*, 482 U.S. at 89-90; *see also Chriceol v. Phillips*, 169 F.3d 313, 316 (5th Cir. 1999).

The Religious Land Use and Institutionalized Persons Act ("RLUPIA"), 42 U.S.C. § 2000cc, "poses a far greater challenge than does *Turner* to prison regulations that impinge on inmates' free exercise of religion." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 858 n.1 (5th Cir. 2004). Congress has also mandated that courts construe the RLUPIA "in favor of a broad protection of religious exercise," to the maximum extent permitted by law. 42 U.S.C. § 2000cc-3(g). Monetary damages are not available to prisoner plaintiffs under RLUIPA. *See Sossamon v. Texas*, ___ U.S. ___, 131 S. Ct. 1651, 1663 (2011).

As discussed at the evidentiary hearing, there are several cases pending in federal district courts across Texas wherein prisoners practicing the Muslim faith are challenging the TDCJ's no-beard grooming policy. These cases have progressed independently and are at different stages in the litigation process. However, the Attorney General has advised the Court that one action, *Ali v. Stephens*, Case No. 9:09-cv-052, currently pending in the United States District Court for the Eastern District of Texas, Lufkin Division, is set for a bench trial before Magistrate Judge Zack Hawthorn on July 14, 2014. The AG represented that this case presents the TDCJ's best evidence to support its grooming policy, and will effectively be the definitive case to test that policy.[4]

---

[4] The AG was asked why the *Garner* decision (Case No. 2:06-cv-218 (S.D. Tex., May 19, 2011) at D.E. 153, 154, and affirmed in *Garner v. Kennedy,* 713 F.3d 237 (5th Cir. 2013)), allowing a Muslim practitioner to wear a quarter-inch beard, does not mandate TDCJ policy. The AG claimed that, prior to *Garner*, it believed the TDCJ's grooming policy was in compliance with the Fifth Circuit's holding in *Demoss v. Crain,* 636 F.3d 145 (5th Cir. 2011), and as

Accordingly, it is respectfully recommended that the Court retain Plaintiff's First Amendment and RLUIPA claims against Brad Livingston and William Stephens in their official capacities, but that those claims be STAYED pending their resolution in the *Ali* action. To the extent Plaintiff has sued these defendants in their individual capacities for monetary damages, it is respectfully recommended that those claims be dismissed for failure to state a claim and/or as frivolous.

### B. Solitary Confinement claim against Warden Monroe.

Plaintiff claims that Warden Monroe violated his constitutional rights when he placed him in solitary confinement without a disciplinary hearing on June 4, 2013, and held him there for 18 to 19 days, with no disciplinary hearing.

To maintain a due process challenge, Plaintiff must establish that his transfer to solitary confinement deprived him of a liberty interest protected by the Fourteenth Amendment. *Meachum v. Fano*, 427 U.S. 215, 223 (1976). However, generally speaking, due process protections attach only to those punishments that impose an atypical and significant hardship in relation to the ordinary incidents of prison life, or to those that extend the length or duration of confinement. *Sandin v. Conner*, 515 U.S. 472, 484-86 (1995). Indeed, a prisoner has no liberty interest in his custodial classification. *Wilkerson Stalder*, 329 F.3d 431, 435-36 (5th Cir.2003). *See also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."). Moreover, the Fifth

---

such, the TDCJ had not fully explored the costs and other issues raised by offenders seeking to wear quarter-inch beards. It intends to offer such evidence in *Ali*.

Circuit has repeatedly affirmed that "[p]rison officials should be accorded the widest possible deference" in classifying prisoners' custodial status as necessary "to maintain security and preserve internal order." *Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008) (citations omitted).

In this case, it appears that Warden Monroe attempted to diffuse a tense situation, one that Plaintiff himself described as almost a "riot," by having Plaintiff, the default leader of the group, escorted away and placed in solitary. Moreover, even if Warden Monroe misread the situation, that is, if Plaintiff was attempting to control the situation and to lead the others into the multipurpose room, Plaintiff's mere placement in solitary confinement based on Warden Monroe's erroneous conclusions would not give rise to a due process claim. *See Luken* v. *Scott,* 71 F.3d 192, 193 (5th Cir. 1995) (placement in administrative segregation based on allegedly erroneous gang-member status was not a deprivation of a constitutionally cognizable liberty interest"); *Harper v. Showers*, 174 F.3d 716 (5th Cir. 1999) (placement of prisoner on lockdown under 24-hour observation did not implicate due process.)

However, although his initial placement in solitary confinement does not violate due process, his continued confinement for 18-19 days without a hearing may in fact state both a due process and an Eighth Amendment violation.[5] Recent research suggests that

---

[5] Cases where segregated confinement is sufficiently atypical to implicate a due process liberty interest involve circumstances much harsher than those presented here. In *Wilkerson v. Stalder*, 329 F.3d 431, 437 (5th Cir. 2003) the Fifth Circuit held that due process *might* have been violated where the plaintiff had been kept on lockdown status for thirty years. *Id.* 329 F.3d at 436 (remanding for determination whether such confinement was "atypical" under *Sandin*). In another case, the Supreme Court held that transfer to the Ohio "Supermax" facility implicated a liberty interest, in part because the conditions there were "more restrictive than any other form of incarceration in Ohio." *Wilkinson*, 545 U.S. at 214. The *Wilkinson* Court noted that at the Supermax facility, "almost all human contact is prohibited." *Id.* at 223. Ohio Supermax prisoners are kept in single cells with solid metal doors that prevent

solitary confinement may amount to cruel and unusual punishment, and many mental health professionals advocate for its abolishment. Indeed, on May 8, 2014, "The Solitary Confinement Study and Reform Act" was introduced to Congress. *See* 2014 WLNR 12467454 (May 8, 2014) ("Rep. Cedric Richmond Introduces Bill to Reform Solitary Confinement."). For purposes of § 1915A. Plaintiff has alleged sufficient facts that, if true, establish that his placement in solitary confinement for 18-19 days without a hearing was atypical treatment and possibly in violation of his constituntionary rights. Thus, it is respectfully recommended that the Court retain this claim and order service on Warden Monroe in his individual capacity.

### C. Remaining claims.

Plaintiff named Warden Currie and Warden Clark as defendants because they denied his grievances concerning his beard. However, a prisoner has no constitutional right to have his grievances investigated or answered favorably. *See Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005).

To the extent Plaintiff has sued any defendant in his official capacity for monetary damages, those claims are effectively claims against the State of Texas itself, and are barred by the Eleventh Amendment. *See Oliver v. Scott,* 276 F.3d 736 (5th Cir. 2002)

---

communication from one cell to another; prisoners take all their meals alone in their cells rather than a common area; and "opportunities for visitation are rare" and are conducted through glass walls. *Id.* at 223-24. Ohio Supermax inmates spend 23 hours a day alone in their cells, where a light remains on at all times. *Id.* at 224. Moreover, confinement at the Supermax facility is indefinite, and otherwise eligible inmates are disqualified for parole consideration. *Id.* These conditions and others were sufficiently extraordinary that the Supreme Court concluded prisoners had a liberty interest in avoiding assignment to the Supermax facility. *Id.*

(Eleventh Amendment bars recovering § 1983 money damages from TDCJ employees in their official capacities). Accordingly, it is respectfully recommended that Plaintiff's claims against Defendants in their official capacities for money damages be dismissed as barred by the Eleventh Amendment.

## V.     Recommendation.

For the reasons stated above, it is respectfully recommended that the Court:

(1)     Retain Plaintiff's First Amendment and RLUIPA claims for declaratory and injunctive relief against Defendants Brad Livingston and William Stephens in their official capacities, that service be ordered on these Defendants, and upon such service, that Plaintiff's claims concerning his right to wear a quarter-inch beard be automatically STAYED pending resolution of the issue in *Ali*;

(2)     Retain Plaintiff's Due Process and/or Eighth Amendment claim(s) against Warden Monroe in his individual capacity and order service on this Defendant;

(3)     Dismiss Plaintiff's claims against Warden Currie and Warden Clark with prejudice for failure to state a claim and/or as frivolous; and

(4)     Dismiss Plaintiff's claims for money damages against defendants in their official capacities as barred by the Eleventh Amendment.

Respectfully submitted this 21st day of May, 2014.

*[Signature: Jason Libby]*
Jason B. Libby
United States Magistrate Judge

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).